UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENNAN LANDY,<br><br>        *Plaintiff,*<br><br>v.<br><br>NATURAL POWER SOURCES, LLC d/b/a SUNTUITY, a New Jersey limited liability company,<br><br>        *Defendant.* | Civil Action No.:<br>3:21-cv-00425-PGS-TJB<br><br>**MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

This case is before the Court on Defendant Natural Power Sources, LLC d/b/a Suntuity's ("Suntuity" or "Defendant") Motion to Dismiss (ECF No. 16) Plaintiff Brennan Landy's ("Plaintiff" or "Landy") First Amended Complaint (FAC). (ECF No. 13). Oral argument was held March 7, 2022. For the reasons that follow, Suntuity's motion is denied.

This Court has original jurisdiction over this matter pursuant the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). (FAC ¶ 5). Venue is proper under 28 U.S.C. § 1391(b) because Suntuity's headquarters are in New Jersey. (FAC at ¶ 7).

I.

The factual background and procedural history of this case are summarized in the Court's August 17, 2021 Order dismissing Landy's original complaint. (Order of Aug. 17, 2021, ECF No. 12). That summary is incorporated herein by reference. Relevant here, Landy brought a single count putative class action lawsuit alleging Suntuity, a purveyor of home solar panels, violated the TCPA by using an Automated Telephone Dialing System (ATDS) to call potential customers. (original complaint, ECF

1

No. 1). Landy's cell telephone was connected to Suntuity through the following process: an unidentified operator utilizing an ADTS (initial ADTS contact) "solicited [Landy] to purchase solar panels or other green energy solutions," (*id.* at ¶¶19-20); Landy was then transferred to an intermediate operator identified as "Steve" with "US Home Solar," (*id.* at ¶21); who then initiated a "warm transfer"[1] to "Evelyn" with Suntuity, (*id.* at ¶22).

The Court dismissed Landy's original complaint because there was no allegation that Suntuity authorized the initial ADTS contact. (ECF No. 12).

Within the FAC, Landy realleges the allegations brought in the original complaint and includes five new factual allegations:

> 27. On information and belief, including the nature of the services pitched to Plaintiff, the downline telemarketing agents that ultimately transferred the call to Suntuity, including "US Home Solar," were authorized to market Suntuity's products and services directly to consumers. The calls made to Plaintiff and the Class members were made to market and sell Defendant's products and services, and they were placed on behalf of, and for the benefit of, Suntuity.
>
> 28. Defendant is vicariously liable for the calls placed by its downline telemarketing agents, including "US Home Solar," under ordinary agency principles because Suntuity directed, authorized, or otherwise ratified the conduct of telemarketers like "US Home Solar," which resulted in the statutory violations alleged in this complaint.
>
> 29. By accepting transfer of the call, marketing its products directly to Plaintiff on the same call, and following up with an email after the call, Suntuity demonstrated consent to the initial, downline agent callers placing calls on its behalf and thereby ratified the conduct of the telemarketing agents involved in the call, including "US Home Solar."
>
> 30. Suntuity's conduct—including accepting transfer of the call and marketing its products directly to Plaintiff on the same call—caused Plaintiff to reasonably believe that any downline agents involved in the call had authority to act on behalf of Defendant.

---

[1] The parties do not define this term, but "warm transfer" is commonly understood to mean that "the first operator stays on the line with the called party during a transfer until the second operator answers." (ECF No. 12 at pp. 10-11).

> 31. Suntuity accepted the benefits of its downline agents' unlawful telemarketing practices by accepting transfer of unauthorized calls made to consumers and accepting payment from new customers and accounts that Suntuity had knowledge were generated through such telemarketing campaigns as the one alleged herein.

(FAC at ¶¶27-31). Suntuity seeks to dismiss the FAC under Rule 12(b)(6) for failure to state a claim for the same reason as the original complaint was dismissed. (Motion to Dismiss FAC, ECF No. 16).

## II.

Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss asserts a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d. Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires showing more than just the possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d. Cir. 2008). The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

The Third Circuit set forth a three-part test for determining whether or not a complaint may survive a motion to dismiss for failure to state a claim:

3

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

### III.

"To assert a claim under the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show that the defendant: (1) called her cell phone; (2) using an automatic telephone dialing system ("ATDS"); (3) without her prior express consent." *Valdes v. Century 21 Real Estate, LLC*, No. 19-05411, 2019 WL 5388162, at *2 (D.N.J. Oct. 22, 2019). Generally, a defendant may be held vicariously liable for violations of this statutory provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016).

Here, Landy alleges that she received a call on her cell phone; and there was a pause before the operator entered onto the call. (FAC at ¶ 9). The pause is sufficient to infer that an ATDS initiated the call. *Hazan v. Wells Fargo Home Mortg.*, No. 18-10228, 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020).

Since there was an interim operator ("Steve" of US Home Solar) between the ATDS and "Evelyn" of Suntuity, the issue arose as to whether Suntuity authorized the use of the ATDS. Here, Landy must plausibly demonstrate that said initial ADTS contact was consented to or directed by Suntuity. Landy may show this through actual and/or or apparent authority or ratification of the acts by Suntuity. See, *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013) (quoting Restatement (Third) of Agency § 2.01 (2006)). A plaintiff sufficiently pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf. *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050, 2018 WL 6061405, at *18 (D.N.J.

Nov. 20, 2018). Alternatively, "[a]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Covington*, 710 F.3d at 120. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Cunningham*, 2018 WL 6061405, at *6 (quoting Restatement Third of Agency, § 4.01 (2006)) (internal quotation marks omitted). The allegations in paragraphs 27 through 31 of the FAC are sufficient to plausibly plead such authorization. From the description of the process of the call, there is circumstantial evidence that "by accepting the call, and following up with an e-mail after the call, Suntuity demonstrated consent" to the use of ADTS. (FAC ¶ 29).

The FAC sufficiently alleges an agency relationship as it may be inferred from the context of the cell phone process. That is, the smooth transfer from the initial ADTS contact to "Steve" and then to "Evelyn" of Suntuity, (FAC at ¶¶20-22), shows a cooperative relationship from which one may infer authority or apparent authority of Suntuity to the initial contact by ADTS. *Cunningham*, 2018 WL 6061405, at *7. Additionally, the FAC alleges that the initial ADTS contact was made to market Suntuity's products, the initial call was made at the direction of Suntuity, and that Suntuity knew the initial caller utilized an ADTS to generate customers for Suntuity. (*Id.* at ¶¶27, 31). Although some of those assertions are based on "information and belief," the Third Circuit permits allegations "on information and belief" where "factual information is peculiarly within the defendant's knowledge or control." *McDermott v. Clondalkin Grp., Inc.*, 649 Fed. Appx. 263, 267-68 (3d Cir. 2016). Here it may be plausibly inferred from the nature of the transaction that Suntuity, in some fashion, directed and/or approved the initial ADTS contact.

5

## IV.

Finally, Suntuity moves to strike or dismiss Plaintiff's class allegations on the ground that the FAC's class definition is an "impermissible fail-safe class" and that the proposed class is not ascertainable. (Motion to Dismiss FAC 18-20, ECF No. 16). Plaintiff proposes the following class definition in the FAC:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs.

(FAC at ¶34).

A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015). "The class definition requires a determination on the merits before members are identified, creating what the Supreme Court called 'one-way intervention.'" *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825. Further, "such a class impermissibly skirts the bar of res judicata." *Zarichny*, 80 F. Supp. 3d at 624. The Third Circuit has not yet determined that a fail-safe class is impermissible. *See Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 478 (E.D. Pa. 2021). However, some courts have found them impermissible. *See Macdonald v. Cashcall, Inc.*, 333 F.R.D. 331, 346 (D.N.J. 2019).

Here, on the face of the Complaint, Plaintiff does not propose a fail-safe class, because the class definition includes those who may have consented to receiving a call on behalf of Suntuity. (FAC at ¶34). Therefore, membership in the class does not depend on a determination of Suntuity's liability. *See Messner*, 669 F.3d at 825; *Valdes*, 2019 WL 5388162, at *2. Additionally, it is premature at this stage of the litigation to dismiss Landy's class allegations on the grounds that the proposed class is not ascertainable because the Court lacks a factual record to determine whether class members can be identified. *Luppino v. Mercedes-Benz USA, LLC*, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013). Further, sometimes the class can be better defined after discovery "by refining the class definition rather than by flatly denying the certification." *Messner*, 669 F. 3d at 825.

## ORDER

**THIS MATTER** having come before the Court on Defendant's Motion to Dismiss Plaintiff's FAC (ECF No. 16); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 14th day of March, 2022,

**ORDERED** that Defendant's motion to dismiss is **DENIED**.

_____
PETER G. SHERIDAN, U.S.D.J.